Richard BEATTY, et al.,
Plaintiffs/Respondents,

v.

METROPOLITAN ST. LOUIS SEWER
DISTRICT, Defendant/Appellant.

No. 77985.

Supreme Court of Missouri,
En Banc.

Dec. 19, 1995.

Order Denying Rehearing Feb. 20, 1996.

Alan C. Kohn, James M. Byrne, Robert H. Grant, and Jeffrey J. Kramer, St. Louis, for Appellant.

Lewis C. Green, Bruce A. Morrison, and Kathleen G. Henry, St. Louis, for Respondents.

David J. Newburger, Lewis Mills, Robert C. Johnson, and Arthur L. Smith, St. Louis, for amici curiae.

PRICE, Judge.

In *Beatty v. Metropolitan St. Louis Sewer District,* 867 S.W.2d 217, 221 (Mo. banc 1993) (*Beatty II* ), this Court declared that a rate increase by the Metropolitan St. Louis Sewer District ("MSD") violated article X, § 22(a) of the Missouri Constitution. On remand, the St. Louis County Circuit Court, for the first time, found that the suit was brought by the three individual plaintiffs as a "representative taxpayer suit" and ordered MSD to credit all of its customers' periodic bills as a method of refund. We reverse in part and remand. This lawsuit was not prosecuted by plaintiffs as a class action pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure. Neither did the trial court follow the procedures of Rule 52.08 to assure the propriety of class action proceedings. It was error to adjudicate the rights and obligations of the approximately 420,000 MSD customers not before the court. As to the three individual plaintiffs, MSD has expressly waived sovereign immunity pursuant to its Ordinance Number 8657, section 12 (Ord. 8657, § 12).

The case is remanded to the circuit court for credits in accordance with Ord. 8657, § 12.

## I.

In 1954, St. Louis City and St. Louis County voters approved a plan establishing the Metropolitan St. Louis Sewer District ("MSD") as a municipal corporation and political subdivision of the state. MSD provides an integrated sewer system for the City of St. Louis and most of St. Louis County. The MSD board of trustees has authority to impose ad valorem taxes and establish charges for sewer services, which it can enforce through liens against real property. MSD currently serves approximately 420,000 customers, including single and multifamily dwellings and commercial and industrial customers.

On May 13, 1992, MSD enacted Ord. 8657, that increased wastewater charges for one year, beginning on July 1, 1992. Relying on *Keller v. Marion County Ambulance Dist.*, 820 S.W.2d 301 (Mo. banc 1991), MSD did not submit this 1992 increase for voter approval. On June 17, 1992, Respondents Richard Beatty, Walter A. Droege, Jr. and Jane Droege brought an action to enjoin the increase because MSD failed to submit the increased charges to voters as required by article X, § 22(a) of the Missouri Constitution. The Petition for Declaratory Judgment and Injunction filed on behalf of respondents did not make any allegations establishing a factual basis for a class action lawsuit pursuant to Rule 52.08.[1] Neither did the petition make any claim for class relief.

1. The text of Rule 52.08 provides:

(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

(c) **Determination by Order Whether Class Action to Be Maintained—Notice—Judgment—Actions Conducted Partially as Class Actions.**

(1) As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this Rule 52.08(c)(1) may be conditional and may be altered or amended before the decision on the merits.

(2) In any class action maintained under Rule 52.08(b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that: (A) the court will exclude the member from the class if requested by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if desired, enter an appearance through counsel.

(3) The judgment in an action maintained as a class action under Rule 52.08(b)(1) or Rule 52.08(b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action under Rule 52.08(b)(3), whether or

On June 29, 1992, the trial court held that the charges were not subject to the article X, § 22(a) requirements and did not issue the injunction. In our first review of this case, we held that the charges were subject to article X, § 22(a) and could not be increased without prior voter approval. *Beatty II* at 221. The standard mandate on remand ordered that the trial court judgment "be reversed, annulled and for naught held and esteemed, and that said appellants be restored to all things which they have lost by reason of the said judgment."

On remand, no additional evidence was taken. In fact, the record fails to reflect that the three plaintiffs involved in this case actually paid any increase under the ordinance in question. It is unclear from the record whether a hearing was held. The record implies, instead, that upon written arguments the trial court found that prior to the effective date of the ordinance respondents filed their action as a "representative taxpayer suit". Consequently, the trial court ordered MSD to refund (by crediting the customers' periodic bills) the amount of the increased charges under the ordinance to all customers who paid the increased charges.

MSD appealed raising two basic issues. First, it argues that the trial court erred in treating this as a "representative" lawsuit. Second, it argues that it is protected from a money judgment by sovereign immunity. The plaintiffs did not cross appeal.

## II.

■ The Missouri Rules of Civil Procedure provide a mechanism for the certification and conduct of class action lawsuits. *Rule 52.08. See also § 507.070, RSMo 1994.* The purpose of class action procedure is to facilitate litigation when the number of persons having interest in a lawsuit is so great that it is impractical to join them all as parties. *Sheets v. Thomann*, 336 S.W.2d 701, 709 (Mo.App.1960). In many cases this allows the accumulation of many relatively small but meritorious claims into a single suit that would otherwise not be pursued.

In his leading work on class action procedure, however, Herbert Newberg notes that "[h]istorically and under modern jurisprudence, a class action is a nontraditional litigation procedure...." 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 1.01 (3d ed. 1992). This is so because class action lawsuits are exceptions to the "cardinal principle of jurisprudence that one is not bound by a judgment in personam entered in litigation to which he was not designated as a party or made a party by service of process or entry of appearance." *Sheets* at 709.

The impact of certification of a lawsuit as a class action is readily apparent. Individuals who did not initiate the litigation and who will have little or no practical control over the litigation nonetheless will be bound by its result. The potential increase in exposure to

not favorable to the class, shall include and specify or describe those to whom the notice provided in Rule 52.08(c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

(4) When appropriate an action may be brought or maintained as a class action with respect to particular issues or a class may be divided into subclasses and each subclass treated as a class, and the provisions of this Rule 52.08 shall then be construed and applied accordingly.

**(d) Orders in Conduct of Actions.** In the conduct of actions to which this Rule applies, the court may make appropriate orders:

(1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court

may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action; (3) imposing conditions on the representative parties or on intervenors; (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly; (5) dealing with similar procedural matters.

The orders may be combined with an order under Rule 62, and may be altered or amended as may be desirable from time to time.

**(e) Dismissal or Compromise.** A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

the defendant and the additional increase in the burden and cost of litigation to all parties may well overwhelm the substantive merits of the dispute.

■ The various provisions of Rule 52.08 have been carefully drafted to weigh these considerations and to assure that due process is maintained. The requirements of this rule are not merely technical or directory, but mandatory. *State ex rel. Niess v. Junkins,* 572 S.W.2d 468, 470 (Mo.1978); *Moore v. City of Pacific,* 534 S.W.2d 486, 493 (Mo.App. 1976); Carl C. Wheaton, *The New General Code for Civil Procedure and Supreme Court Rules Interpreted,* 20 Mo.L.Rev. 383, 386 (1955).

There is no reference to Rule 52.08, whatsoever, in the named plaintiffs' Petition for Declaratory Judgment and Injunction; neither is there any pleading of fact to support class action relief; neither is there any request for class action relief. The record reflects no attempt to amend this petition, nor any evidence introduced at any time in this lawsuit, that would indicate that class issues were considered or that the requirements of Rule 52.08 were established.

■ Only on remand after appeal did plaintiffs request a credit refund to all ratepayers.[2] In this regard, the trial court did make a finding of fact that this case was filed as a "representative taxpayer suit". This finding, however, is not supported by the record, evidentiary or otherwise. Moreover, the only "representative" procedure by which such a lawsuit can proceed is in accordance with the class action provisions of Rule 52.08. Just as we found in *State ex rel. Niess v. Junkins,* 572 S.W.2d 468, 470 (Mo. banc 1978):

[T]here was no pre-trial order with reference to maintenance of this suit as a class action. There was no finding at any time as to compliance with the requirements of Rule 52.08(b) and there was no notice given to members of the class in accordance with Rule 52.08(c)(2). Consequently, we conclude that this case was not maintainable as a class action and the trial court erred in holding that it was. However, the suit is maintainable by the individual relators on their own behalf . . .

Plaintiffs rely primarily upon *State ex rel. Abeille Fire Ins. Co. v. Sevier,* 73 S.W.2d 361, 367 (Mo. banc 1934), *cert. denied,* 293 U.S. 585, 55 S.Ct. 99, 79 L.Ed. 680 (1934), for authority that a trial court's equitable power can be utilized to refund excess payments by ratepayers. *Sevier,* as *Aetna Ins. Co. v. Hyde,* 34 S.W.2d 85 (Mo. banc 1930), was a suit initiated by the superintendent of insurance in his official capacity and simply does not apply to litigation pursued by a private litigant. For the same reason, cases concerning litigation with the Public Service Commission are not helpful to plaintiffs. *See State ex rel. Utility Consumers Council of Missouri, Inc. v. Public Service Commission,* 585 S.W.2d 41 (Mo. banc 1979). The plaintiffs initiated this suit as private litigation. They were not empowered by any Missouri law, regulation, or rule of court to represent the interests of any other individuals.

■ Whether this type of an action is suited for class action procedure is certainly worthy of consideration. Such a determination, however, must occur in the proper course of a lawsuit. Plaintiffs did not establish either that this was a proper case for class certification or that they were proper class representatives pursuant to Rule 52.08.[3]

2. Contrary to plaintiffs' argument, the language used in the remand order "that the said appellants be restored" is expressly limited to the named plaintiffs.

3. Judge Robertson's dissent raises two concerns about the practicality of applying class action procedures to cases such as this. First, he fears that the notice requirements of subsection (c)(2) of Rule 52.08 would serve as an obstacle to potential plaintiffs and as a financial burden to the state. Second, he questions the legal effect of

such a suit upon class members who opt out pursuant to that subsection.

Subsection (c)(2), however, by its own terms, applies only to class proceedings certified pursuant to subsection (b)(3) of the rule. Subsection (c)(2), and its various requirements, simply does not apply to class proceedings certified pursuant to subsections (b)(1) or (b)(2), which are probably preferable in this type of a lawsuit. Certification under subsection (b)(1) or (b)(2) does not require notification nor does it allow class mem-

It was error for the trial court to order relief concerning individuals and entities who were not parties to the case.

### III.

MSD also raised a number of different arguments concerning the defense of sovereign immunity. The right of the sovereign to immunity from suit has long been recognized in Missouri. It applies to tax moneys collected by the state. Although sovereign immunity may be waived, "it is the consent to be sued that is to be expressed in constitutional or statutory enactment or waived by voluntary appearance and submission to jurisdiction." *Kleban v. Morris,* 363 Mo. 7, 247 S.W.2d 832, 837–38 (1952). In *Page v. Metropolitan St. Louis Sewer District,* 377 S.W.2d 348, 352 (Mo.1964), it was determined that the right of sovereign immunity extends to MSD.

Plaintiffs filed a lawsuit seeking declaratory relief and an injunction prior to payment of the increased sewer rates. This is an appropriate method to enforce the Hancock Amendment. *Fort Zumwalt School Dist. v. State,* 896 S.W.2d 918, 923 (Mo. banc 1995). Although the trial court initially did not rule in favor of the plaintiffs, *Beatty II* established that it should have done so. Accordingly, on remand we directed the trial court's judgment "be reversed, annulled and for naught held and esteemed, and that said appellants be restored to all things which they have lost by reason of the said judgment." This is because "[t]he successful appellant has the right to restitution of money lost by reason of the erroneous or void judgment." *State ex rel. State Highway Comm'n v. Morganstein,* 588 S.W.2d 472, 477 (Mo. banc 1979).

In this case, we need not balance the court's inherent power to impose such a remedy against the state's right to be immune from suit. Nor do we need to determine whether the Hancock Amendment transcends the defense of sovereign immunity. Here, MSD has adopted an ordinance that provides in part:

> Any funds owed by the District to any Person for any reason may be used by the District as a set-off against any charges owed by the Person to the District, whether delinquent or not.

> The overpayment by any Person of any charges made by the District, shall be available and may be used by the District as a set-off of any unpaid or delinquent charges against such Person.

Ord. 8657, § 12.

The trial court referred to this ordinance in its Judgment and Decree and apparently tailored its relief in accordance with it. Within the context of this lawsuit, any increased payment of sewer rates by these plaintiffs would certainly constitute "overpayment" entitling them to a credit-refund under Ord. 8657, § 12. *See Hackman v. Director of Rev.,* 771 S.W.2d 77, 81 (Mo. banc 1989) (holding that payment of a tax wholly unauthorized by law was an "overpayment"), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990). Although they might have done so, plaintiffs did not appeal their entitlement to any further relief, such as a direct and immediate refund of the excess rates paid with interest.

bers to opt out. *See 1 Newberg on Class Actions, supra,* § 4.14 and § 4.20.

Most significantly, however, Judge Robertson misunderstands that the role of class action procedure is to attempt to safeguard, not to frustrate, the rights of absent class members. Although he proposes a newly fashioned private "representative" lawsuit, he does not explain how such a lawsuit could proceed consistent with our principles of due process or who would protect the rights of the unnamed plaintiffs. Neither does he explain why class certification under our existing Rule 52.08(b)(1) or (b)(2) would not have worked well and accomplished all of the goals he seeks, if such certification had ever been requested. In short, it is not the role of the courts to fashion a new remedy at the completion of a lawsuit, even at the risk of disappointing a large number of individuals, when a private litigant chose not to pursue an already existing and adequate remedy at the beginning of the lawsuit.

It is ironic here that Judge Robertson seeks to affirm an award to class members that is inadequate in terms of his understanding of the Hancock Amendment. Instead of full and immediate refund of the overpayments with interest, the relief awarded by the trial court, and accepted by the named plaintiffs, was merely a periodic set-off, whatever that might turn out to be.

Accordingly, we remand this matter for a determination of the amount of the named plaintiffs' overpayments, if any, and the just setoff to which the plaintiffs are entitled pursuant to MSD Ord. 8657, § 12.

### IV.

In this opinion, we do not address whether the remainder of MSD customers are entitled to any setoffs in accordance with MSD Ord. 8657, § 12, or whether they are entitled to any relief beyond that provided by the ordinance. It is enough to say that substantial legal and policy arguments exist on both sides of this question. The other MSD customers were not parties to this lawsuit, and the lawsuit did not proceed under our rules in a manner that would have safeguarded both their rights and MSD's rights regarding the determination of these issues. Therefore, any such ruling here would neither be wise nor just.

Plaintiffs argue that to so limit our holding will render this litigation "meaningless". This is not so. Plaintiffs have obtained a ruling of this Court that MSD may not increase its sewer charges without an election. Plaintiffs also will receive a credit refund of the excess rates they paid, if any. As private litigants, they obtained all that they could request. At no place in their petition did plaintiffs seek to pursue this litigation on behalf of any defined class of individuals other than themselves. Even upon remand, they did not attempt to amend their petition to make such a request, or to establish by evidentiary hearing the propriety of an order designating them as class representatives. Plaintiffs in this proceeding have no right to complain on behalf of others for relief that others did not request or that others might consider inadequate.

### V.

We reverse the portion of the judgment of the trial court insofar as it applies to any individuals or entities other than the named plaintiffs. We remand the case for a determination of the offset to which the named plaintiffs are entitled and for the awarding of the named plaintiffs' attorneys' fees and expenses in accordance with art. X, § 23 of the Missouri Constitution.

HOLSTEIN, C.J., BENTON and COVINGTON, JJ., and CROW, Special Judge, concur.

ROBERTSON, J., concurs in part and dissents in part in separate opinion filed.

LIMBAUGH, J., concurs in opinion of ROBERTSON, J.

WHITE, J., not participating because not a member of the Court when cause was submitted.

ROBERTSON, Judge, concurring in part and dissenting in part.

The history of the wastewater fee increase that led to this litigation is set out in *Beatty v. Metropolitan St. Louis Sewer District*, 867 S.W.2d 217 (Mo. banc 1993) (*Beatty II*). The three plaintiffs in that action, of which this is but another chapter, filed suit on June 17, 1992, to enjoin a fee increase taking effect July 1, 1992. For three and one-half years plaintiffs have pursued their belief that they are entitled to a refund of the fees MSD imposed in violation of section 22(a). Those fees amount to $4.00 per month imposed for a period of a single year. As I understand the record, MSD stopped collecting the offending fees on June 30, 1993. Now, after three and one-half years of litigation affecting nearly 420,000 customers of MSD and numerous trips up and down the appellate ladder, the majority holds that this case is about three people and $96.00—the fees paid by Mr. Beatty and the fee paid by Mr. and Mrs. Walter Droege, his co-plaintiffs. No other person who paid the fee imposed by MSD in violation of the constitution benefits from this litigation. Surely this cannot be what the people intended when they amended the constitution to permit private attorneys general to enforce the constitution.

In November, 1980, the voters of Missouri amended the constitution by adding sections 16–24 (the Hancock Amendment) to article X. The nine new sections of the amendment purport to impose strict limits on the ability of state and local governments to increase taxes. From the plain language of the

amendment, one could argue that state government cannot increase taxes without a constitutional amendment raising state government's income limitations, even if the voters approve a referendum authorizing a statutory tax increase. Art. X, § 18. And from the plain language of the amendment it is clear that local government may not raise its taxes, licenses or fees (hereafter tax or taxes) without direct voter approval *in advance* of the imposition of the government's tribute. Art. X, § 22(a).

Unfortunately, the plain language of the Hancock Amendment does not tell us the scope of relief a court may afford taxpayers in general when a single taxpayer successfully sues to enforce the amendment. It merely empowers a taxpayer to bring an action "to enforce the provisions of section 16 through 22 ... of this article...." Art. X, § 23.

From the constitution's silence, the majority concludes that when a taxpayer brings an article X, section 23 action against a unit of local government to enforce section 22, the extent of the relief a court may afford is to declare the tax unconstitutional, enjoin the collection of the tax that violates section 22, award the actual, named plaintiffs in the action a refund of the unconstitutional tax, and enter a judgment against the offending government unit for the plaintiff's attorneys' fees. For the Court, these limits on relief apply unless the plaintiffs file a class action suit under Rule 52.08 on behalf of all persons who paid the tax. Persons who paid the unconstitutional tax, but who were not part of the legal action, must bring their own actions to recover their illegally collected tribute if no class action is filed by the original plaintiffs.

Clearly the silence of the Hancock Amendment on this issue leaves the Court in a position to impose any procedural rules it wishes. We sail uncharted waters here. The procedure adopted by the Court is reasonable within the context of the usual course of litigation. But in determining the proper procedural rule under the Hancock Amendment, the intent of the voters in adopting the Hancock Amendment is the polestar. That seems sufficient guidance for me to reach a different conclusion than does the Court: I

would not require a class action as a procedural predicate to a refund of taxes to all taxpayers who pay a tax collected in violation of section 22(a).

The Court's holding ignores the intent of the Hancock Amendment. Worse, it makes the enforcement mechanism set out in section 23 more difficult in some cases and toothless and laughable in this one.

Whatever one wishes to say about the Hancock Amendment, this much is clear: it no longer blithely trusts the ability of the elected representatives of the government to manage the government's fiscal affairs. Prior to the adoption of the Hancock Amendment, the people had given their elected representatives carte blanche authority to raise taxes. The Hancock Amendment revokes that consent and establishes a presumption that government has taken enough from the taxpayers and, as to local government, forbids the government from reaching any deeper into their pocketbooks without the taxpayers' express approval *in advance*. Because of its basic distrust of government, it is unlike any other provision of the constitution or the statutes. Therefore, the remedy the amendment admits—a taxpayer suit—must hang like the bloody blade of the guillotine over the Reign of Terror—a constant, deterring reminder of the fate that awaits rulers who ignore the will of the people.

The Court's opinion thwarts that purpose. It says that a class action is necessary because courts cannot assume that plaintiffs in a section 23 action represent the will of other taxpayers who have paid the unconstitutional tax and who "will be bound by its result" even if they disagree. This conclusion is misguided for at least four reasons.

First, only a taxpayer can bring the suit to enforce the amendment. This limitation assures that the person bringing the suit has an identical factual interest in the action to all other persons who actually paid the tax. Second, the voters' adoption of the Hancock Amendment created the presumption that taxpayers have a common interest in paying only taxes they approve and, conversely, in not paying those taxes they do not approve. The amendment presumes that common in-

terest extends to actions for refunds of taxes unconstitutionally imposed. Third, taxpayers who want the government to collect the tax need not accept their refund if a taxpayer suit to enforce section 22 is successful. Fourth, a successful taxpayer suit necessarily enjoins the government from further collecting the tax. Even those taxpayers who disagree with the lawsuit are bound by its results prospectively once the plaintiff taxpayers prevail. Mo. Const. art. X, § 3.

The majority embraces the class action because it "facilitates litigation when the number of persons having [an] interest in a lawsuit is so great that it is impractical to join them all as parties" and because "class actions allow the accumulation of many relatively small but meritorious claims into a single suit that otherwise would not be pursued." [Emphasis added.] As to the former contention, the number of persons who have paid the unconstitutional charge in this case is large—over 420,000. If, however, the Court chooses to read section 23 as permitting representative suits, the first purpose cited by the majority is accomplished without the often messy and always expensive notification requirements imposed by Rule 52.08(c)(2).

As to the latter purpose, this case shows exceedingly well that section 23's promise of an award of attorneys' fees in a successful action encourages taxpayers to pursue relatively small, but meritorious claims.

Class actions permit geographically diverse parties to join their common interests in pursuit of a common legal objective. Rule 52.08 advises that a class action is necessary to prevent "inconsistent or varying adjudications with respect to individual members of the class. . . ." Rule 52.08(b)(1)(A).

Taxpayer litigation against local governments is usually geographically confined to the corporate limits of the local government. The facts at issue are inherently identical and the defense offered by the government applies to all potential taxpayer suits to enforce section 22. Therefore, the threat of inconsistent judgments is substantially lessened in taxpayer litigation against local governments because of the nature of the claims made. Indeed very few of the policy arguments advanced in favor of requiring class actions strongly militate in favor of requiring plaintiff taxpayers to proceed with a class action under the Hancock Amendment. Respectfully, it makes little sense to me to require governments to pay the unnecessarily high expenses of a class action suit when the demands on the fiscal resources of the government were sufficiently great as to require the fee increase in the first place.

Indeed, the most curious aspect of the majority's insistence on applying Rule 52.08 presents a potential outcome that violates the constitution. Under Rule 52.08(c)(2) a potential member of the class may ask the court to be excluded from the class. The judgment of the court does not apply to the excluded member. *Id.* Because that member is excluded, a declaration that a tax is unconstitutional under section 22 does not apply to that person and the taxing authority may continue to levy the tax as to that person. Yet, article X, section 3, demands that taxes "shall be uniform upon the same class or subclass of subjects within the territorial limits of the authority levying the tax." Surely the majority cannot intend Rule 52.08 to apply in all its detail. And if it does not, one wonders which components of the rule apply and which do not.

Finally, section 18 requires the state government to refund revenues it collects above the revenue limit the constitution imposes. Art. X, § 18(b). If we are to accept the majority's conclusion on its face (and ignore the tenuous foundation upon which it rests), we must conclude that a lawsuit to enforce the refund provisions of section 18 will result in refunds only to the named plaintiffs, unless the plaintiffs receive judicial approval to form a class, notify the five million plus taxpayers of this state, and give them an opportunity to exclude themselves from the judgment. Given the clear thrust of the Hancock Amendment, this seems an absurd result.

I see no reason to saddle government with the costs of successful class action lawsuits to enforce the Hancock Amendment. This is particularly so when the much more efficient procedure of permitting the plaintiffs to rep-

resent all person who have paid the unconstitutional tax seems preferred by the amendment itself, if not in its words, at least in its spirit.

With respect, I believe the Court would better serve the taxpayers and the purposes of the constitution by lowering barriers to taxpayers suits, not erecting them in the name of procedural purity.

For the reasons expressed, I respectfully dissent from that portion of the Court's opinion limiting the refund of the wastewater fee only to the named plaintiffs in this case. I read the Hancock Amendment in general, and section 23 in particular, to permit representative taxpayer lawsuits to result in refunds of taxes imposed in violation of article 22 to all person who paid the unconstitutionally imposed tax. Despite what the majority says in its third footnote, *slip op. at* ——, the manner in which that refund can be accomplished is not before the Court; the majority has made the issue of refunding unconstitutionally collected fees irrelevant for all but three of the nearly 420,000 persons who paid them.

I concur in the Court's judgment that appellant's sovereign immunity claim is without merit.

### ON MOTION FOR REHEARING

■ In its motion for rehearing, MSD argues that plaintiffs should not be allowed to recover under § 12 of Ordinance No. 8657 because that ordinance had been declared invalid under the Hancock Amendment. Even if we were to assume that the entirety of Ordinance No. 8657 was nullified, a conclusion strongly contested by plaintiffs, or ignore plaintiffs' claim that identical refund language appears in the prior rate Ordinance No. 8370, MSD's argument would still lack merit. MSD cites *State ex rel. Cardinal Glennon Memorial Hospital v. Gaertner,* 583 S.W.2d 107, 118 (Mo. banc 1979). The holding in *Cardinal Glennon* does not support MSD's argument. It defeats it. There the Court explained:

> In the past it has been stated that "An unconstitutional statute is no law and confers no rights ... (citations omitted).... This is true from the date of its enactment,

and not merely from the date of the decision so branding it." *State ex rel. Miller v. O'Malley,* 342 Mo. 641, 652, 117 S.W.2d 319, 324 (Mo. banc 1938); *accord Norton v. Shelby County,* 118 U.S. 425, 442, 6 S.Ct. 1121 [1125–26], 30 L.Ed. 178 (1886). The modern view, however, rejects this rule to the extent that it causes injustice to persons who have acted in good faith and reasonable reliance upon a statute later held unconstitutional, e.g. *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1972); *Perkins v. Eskridge,* 278 Md. 619, 366 A.2d 21 (Md.1976); *Shreve v. Western Coach Corp.,* 112 Ariz. 215, 540 P.2d 687 (Ariz. banc 1975); *Downs v. Jacobs,* 272 A.2d 706 (Del.1970). We join the view espoused in *Lemon, Perkins, Shreve* and *Downs.*

*See also State v. County Court of Greene County,* 667 S.W.2d 409, 413 (Mo. banc 1984). Under the facts of this case it would be glaringly unjust to prohibit party plaintiffs from recovering taxes paid under an ordinance that provided for credit-refunds of overpayments, after a successful challenge to the ordinance's constitutionality.

■ MSD also argues that we should declare in this action whether all other MSD customers are entitled to class relief. MSD, of course, argues that the other customers are not entitled to relief. Although MSD points out that two separate class action proceedings now have been filed, it ignores the fact that plaintiffs in this proceeding have neither requested to be, nor have been certified as, class representatives for the remainder of the MSD customers, pursuant to Rule 52.08. As our opinion makes clear, it would be improper to adjudicate the rights of individuals to money damages or credit-refunds who are not represented in this lawsuit.

The motion for rehearing is denied.