**M. Louise RESSLER, Appellant,**

v.

**CLAY COUNTY, MISSOURI,**
**Respondent.**

**No. WD 73601.**

Missouri Court of Appeals,
Western District.

June 19, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2012.

Application for Transfer Denied
Sept. 25, 2012.

Karen K. Howard, Kansas City, MO, for appellant.

Michelle R. Stewart, Overland Park, KS, and Kevin A. Graham, Liberty, MO, for respondent.

Division Three: KAREN KING MITCHELL, P.J., JAMES M. SMART, JR., and GARY D. WITT, JJ.

JAMES M. SMART, JR., Judge.

Louise Ressler, a former employee in the office of the Clay County Treasurer, sued Clay County, alleging among her claims a class action on behalf of herself and other female employees ("putative class members") for gender discrimination in compensation in violation of the Missouri Human Rights Act ("MHRA"), Chapter 213, RSMo. The trial court granted summary judgment in favor of Clay County on her putative class action before addressing the class certification issue. She appeals the grant of summary judgment.

For the reasons discussed herein, we determine that the trial court did not err in granting defendant's motion. We also rule that the court was not required to make a determination on class certification prior to ruling on Clay County's motion for summary judgment. We affirm.

### Factual Background

Louise Ressler worked in the office of the Clay County Treasurer from November of 1998 through November of 2008. During her time in the Treasurer's office, Ressler worked full time as a deputy treasurer underneath two different treasurers. The Clay County Treasurer is an elected office holder. Ms. Ressler's paycheck was issued by the County under a budget adopted by the Clay County Commission.

Ressler filed this action on February 17, 2010, asserting four counts against Clay County, including causes of action for sex discrimination, age discrimination, disability discrimination, and retaliation. She brought the cause of action for sex discrimination in Count I of her petition on behalf of herself and all other female employees of Clay County that are similarly

situated against the County, not against any office holders. Ressler's cause of action for sex discrimination alleged that she and the putative female class members "received disparate treatment in terms of compensation," in that the County paid similarly situated males more than Ressler and the putative female class members. Ressler identified the members of the putative class as including: (1) those female employees, including Ressler, holding job positions in the County, who were paid less than the male employees in the same classification; and (2) those female employees, including appellant, holding job positions which formerly had "internal equity" with male employees' job positions, but which were not upgraded when the male employees' job positions were upgraded to a higher classification level.

Clay County filed its motion for summary judgment as to Ressler's *individual* claims of gender discrimination. The County did not move for summary judgment on the putative class members' claims. Clay County contended that because there were no male employees working in the Clay County Treasurer's Office during the relevant time period challenged by Ressler, her argument for gender discrimination failed as a matter of law, because each individual elected official was in charge of determining salaries for their employees within the total appropriation for that office set by the County Commission.

Subsequently, Ressler filed (1) a motion for an order permitting class counsel reasonable time to determine whether a new class representative could be substituted to litigate the interests of the class, and (2) a motion for modification of the scheduling order to extend the time to file her motion for class certification. The court held a motion hearing on the matter. The court stated at the hearing that it would give Ressler additional time to file her Rule 52.08 [1] motion for certification of the class, but denied the motion for an order allowing more time to determine whether a new class representative could be substituted. The motion for summary judgment as to Count I was taken under advisement.

Almost one month after the hearing, the trial court granted Clay County's motion for summary judgment as to Count I of Ressler's petition. The trial court found that the summary judgment on Count I should be treated as final because there "is no just reason for delay." Ressler appeals the grant of the motion for partial summary judgment. In view of the fact that Ressler purported to bring a class claim as a class representative, and in view of the other circumstances of the case, we agree that treating the summary judgment on Count I as final and appealable is appropriate.

## Discussion

Ressler's first three points on appeal all rely on the contention that the trial court erred by failing to rule on the certification of the putative class *before* considering and granting a pre-certification dispositive motion regarding her individual claims. Because all three points hinge on whether the trial court had the ability to address dispositive motions prior to certification, and a finding on this is dispositive of the class issues, we address all three points together.

## Standard of Review as to Whether Class Certification Must First be Addressed

The parties purport to assert different standards of review as to the question of

---

1. All Missouri Rules of Civil Procedure references are to the Missouri Court Rules (2011), unless stated otherwise.

whether the trial court erred in ruling the defendant's motion for summary judgment on Count I *before* dealing with the issue of class certification. Ressler contends that because the trial court granted the underlying summary judgment motion as to Count I, we must apply the summary judgment standard of review. *See ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Clay County, on the other hand, contends that the appropriate standard of review as to whether the class claim could go forward is abuse of discretion because the determination of whether an action should proceed as a class action ultimately rests within the sound discretion of the trial court. *See State ex rel. Coca–Cola Co. v. Nixon*, 249 S.W.3d 855, 860 (Mo. banc 2008).

■ Neither party has cited the precisely correct standard of review for this case. The issue in the first three points is whether the trial court was required to make a determination on Rule 52.08 certification before proceeding with dispositive motions on individual issues. Rule 52.08(c)(1) states, in part, that "[a]s soon

as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." "Missouri Supreme Court rules are to be interpreted in the same fashion as statutes." *Joshi v. Ries*, 330 S.W.3d 512, 514–15 (Mo.App. 2010) (quoting *Dynamic Computer Solutions, Inc. v. Midwest Mktg. Ins. Agency, L.L. C.*, 91 S.W.3d 708, 713 (Mo.App. 2002)). "Statutory interpretation is a question of law, which we review *de novo.*" *Id.* at 515.

### Analysis

■ No Missouri court has addressed this specific issue with regard to Rule 52.08.[2] Federal Rule of Civil Procedure 23, which governs class actions, is extremely similar to Missouri Rule 52.08, and the language in question here in Rule 52.08(c)(1) is almost identical to that of Federal Rule 23(c)(1)(A).[3] When there is no Missouri interpretation of Rule 52.08, federal court interpretations of Federal Rule 23 are persuasive in interpreting Rule 52.08.[4] *See State ex rel. Union*

---

**2.** While Ressler claimed in her reply brief and at oral argument that this court's interpretation of Rule 52.08(c)(1) in *Hope v. Nissan North America, Inc.*, 353 S.W.3d 68, 73–74 (Mo.App.2011), governs the question before us, this is not correct. In *Hope,* this court stated that Rule 52.08(c)(1) "means the trial court is *normally* required to make its determination regarding certification 'before the benefit of full discovery or the actual presentation of evidence.' " *Id.* at 74 (citing *Smith v. Am. Family Mut. Ins. Co.*, 289 S.W.3d 675, 688 (Mo.App.2009)) (emphasis added). The use of the word "normally" suggests that there are exceptions to the rule, and we cannot conclude that the *Hope* court intended to foreclose such exceptions and require a ruling on class certification before any other action is taken by the court. Nor can we conclude that this language disposes of the present issue before the court. Furthermore, Ressler admits this is an issue of first impression in Missouri in her brief.

**3.** Federal Rule 23(c)(1)(A), which was amended in 2003, states, "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."

**4.** Ressler contends that because Missouri did not amend Rule 52.08(c) to match the new wording of Federal Rule 23(c)(1)(A) in 2003, the legislature intended *not* to allow summary judgment rulings prior to class certification, and therefore we should not find federal case law persuasive. Ressler cites no authority for this proposition. And, in fact, federal interpretations of Rule 23, both before and after the 2003 amendments, allow for rulings on motions for summary judgment prior to class certification, *see infra.* For cases after 2003, see, *e.g., BookLocker.com, Inc. v. Amazon.com, Inc.*, 650 F.Supp.2d 89, 97 n. 3 (D.Me.2009) (affirming district court grant of summary

*Planters Bank, N.A. v. Kendrick,* 142 S.W.3d 729, 735 n. 5 (Mo. banc 2004).

The federal courts have addressed this issue and are in consensus. The Ninth Circuit Court of Appeals, in *Wright v. Schock,* 742 F.2d 541 (9th Cir.1984), considered the specific issue of whether a court may address substantive motions regarding a plaintiff's individual claims prior to making a decision on class certification. In *Schock,* the plaintiffs filed a putative class action alleging violation of federal and state securities laws. *Id.* at 542. The defendant banks and title companies filed motions to dismiss and for summary judgment as to the plaintiffs' individual claims. *Id.* The district court held that the defendants were entitled to summary judgment on the issue of liability and dismissed them from the case. *Id.* at 542–43. The plaintiffs appealed, arguing it was improper for the district court to order summary judgment in favor of the defendants without first ruling on class certification. *Id.* at 543.

The *Schock* court considered the text of Federal Rule 23(c)(1), which stated (identically to the current Missouri Rule 52.08(c) at that time) that the court must rule on the issue of class certification "[a]s soon as practicable after the commencement of an action brought as a class action. . . ." *Id.* Noting that the drafters of Rule 23 considered and rejected a provision imposing a strict, mechanical approach to class action procedures, the court found that the language of section (c)(1) "leaves much room for discretion." *Id.* In particular, the word "practicable" in (c)(1) "calls upon judges to weigh the particular circumstances of particular cases and decide concretely what will work." *Id.* (internal quotations and citations omitted). Furthermore, the court also reviewed several other decisions where other circuit courts of appeals affirmed summary judgment in favor of a defendant in a putative class action case where there had not been a ruling on class certification and found these decisions to be consistent with the language of Federal Rule 23(c)(1).[5]

With this in mind, the court concluded that "the timing provision of Rule 23 is not absolute. Under the proper circumstances—where it is more practicable to do so and where the parties will not suffer significant prejudice—the district court has discretion to rule on a motion for summary judgment before it decides the certification issue." *Id.* at 543–44. Furthermore,

> [n]either Fed.R.Civ.P. 23 nor due process necessarily requires that the district court rule on class certification before granting or denying a motion for summary judgment. Rule 23 clearly favors early determination of the class issue, but where considerations of fairness and economy dictate otherwise, and where the defendant consents to the procedure, it is within the discretion of the district court to decide the motion for summary judgment first.

*Id.* at 545–46.

Since the Ninth Circuit's decision in *Schock,* numerous other federal courts have held similarly, or have implicitly agreed with the rule of allowing dispositive

judgment prior to class certification); for cases before 2003, see, *e.g., Wright v. Schock,* 742 F.2d 541 (9th Cir.1984) (same).

**5.** *See, e.g., Project Release v. Prevost,* 722 F.2d 960, 963 & n. 2 (2d Cir.1983); *Pharo v. Smith,* 621 F.2d 656, 663–64 (5th Cir.), *on rehearing aff'd in part, remanded in part on other grounds,* 625 F.2d 1226 (1980); *Vervaecke v. Chiles, Heider & Co.,* 578 F.2d 713, 719–20 (8th Cir.1978); *Crowley v. Montgomery Ward & Co.,* 570 F.2d 877, 879 (10th Cir.1978); *Acker v. Provident National Bank,* 512 F.2d 729, 732 n. 5 (3d Cir.1975).

proceedings as to individual claims prior to determination of certification. *See, e.g., Sanchez v. Triple–S Mgmt., Corp.,* 492 F.3d 1 (1st Cir.2007); *Telfair v. First Union Mortg. Corp.,* 216 F.3d 1333, 1343 (11th Cir.2000); *Great Rivers Coop. of Se. Iowa v. Farmland Indus., Inc.,* 120 F.3d 893, 899 (8th Cir.1997); *Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 941–42 (7th Cir.1995); *Thompson v. County of Medina, Ohio,* 29 F.3d 238, 240–41 (6th Cir.1994); *Floyd v. Bowen,* 833 F.2d 529, 534–35 (5th Cir.1987). In *Cowen,* the court noted that while "[i]t is true that Rule 23(c)(1) of the civil rules requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment[,] ... 'usually' is not 'always,' and 'practicable' allows for wiggle room." 70 F.3d at 941 (internal citations omitted).

 The *Cowen* court and others have recognized that if summary judgment is granted before the putative class is certified, the judgment *does not* have preclusive effect in future suits filed against the defendant by other claimants on the same subject matter, and thus the defendant would be forced to defend those actions as well. *Id.* at 941–42. "When a defendant moves for summary judgment prior to class certification, ... [and] the defendant seeks summary judgment knowing of the possibility that other plaintiffs will enter the case and not be bound thereby, it is not for the plaintiffs [n]or the court to deter them from assuming that risk." *Smith v. Network Solutions, Inc.,* 135 F.Supp.2d 1159, 1165 (N.D.Ala.2001) (internal citations omitted). Thus, a grant of summary judgment in favor of the defendant on an individual plaintiff's claims before the putative class is certified does not

have any preclusive effect on the future claims of anyone that might have been included in the putative class but for plaintiff's shortcomings. *See Curtin v. United Airlines, Inc.,* 275 F.3d 88, 93 (D.C.Cir. 2001); *BookLocker.com, Inc. v. Amazon.com, Inc.,* 650 F.Supp.2d 89, 97 n. 3 (D.Me.2009). Therefore, the claims of the putative class members here are not before the court, and there is no prejudicial effect on their individual claims by granting the summary judgment motion.[6]

Ressler seems not to understand this procedural reality. She contends that the due process rights of the putative class members were denied because they were denied redress of their injuries, and the members of the putative class lost their legal rights to pursue separate claims against the respondent due to the grant of partial summary judgment. Ressler cites *State ex rel. Coca–Cola Co.,* for the assertions that class actions are designed to protect "the due process rights of absentee class members." 249 S.W.3d at 860. However, *Coca–Cola Co.,* along with many of the other Missouri cases relied on by Ressler—*State ex rel. Union Planters Bank, N.A. v. Kendrick,* 142 S.W.3d 729, 735 (Mo. banc 2004); *Mitchell v. Residential Funding Corp.,* 334 S.W.3d 477, 484–85 (Mo.App.2010); *Dale v. DaimlerChrysler Corp.,* 204 S.W.3d 151 (Mo.App.2006)—are distinguishable from the present case because in each, the putative class *had already been certified* by the trial court, thus the class members' due process rights were subject to being affected by any decision of the court.

Ressler also contends that *Beatty v. Metropolitan St. Louis Sewer District,* 914 S.W.2d 791, 794 (Mo. banc 1995), stands for the proposition that due process re-

---

**6.** None of the putative class members have received official notice of the pending action or otherwise.

quires a trial court to permit the putative class plaintiffs an opportunity to utilize the class certification process prior to granting a motion for summary judgment on the class representative's claims. However, *Beatty* does not so hold. The *Beatty* Court found that the plaintiffs in that case did not avail themselves of the class certification process under Rule 52.08; they instead initiated the suit as private litigation. *Id.* at 795. Only later, after appeal and remand, did the plaintiffs request a credit refund to all ratepayers of the sewer by amending the petition to pursue a "representative taxpayer suit," which the trial court certified. *Id.* The Missouri Supreme Court found this to be error, *not* because putative class members were not given a chance to utilize the class certification process, but because the court ordered relief concerning individuals and entities who were not parties to the case. *Id.* at 796. Here, as in *Beatty*, the putative class members, none of which had even received formal notification regarding the potential class suit, were not yet parties to the case. Their individual claims were not foreclosed, and their due process rights were not violated. *See id.*

Once again, the federal courts have specifically noted that "neither Fed.R.Civ.P. 23 *nor due process* necessarily requires that the district court rule on class certification before granting or denying a motion for summary judgment." *Thompson*, 29 F.3d at 241 (emphasis added). And, furthermore, "[w]ithout certification, no final decision could be binding on a [putative] class.... We therefore treat this case as one brought by the named plaintiffs individually, not as members of a class." *Pharo*, 621 F.2d at 664.

Because this case was brought by the named plaintiff, Ressler, and not by members of the putative class, Ressler's concerns over the tolling of the statute of limitations for MHRA for the putative class members' claims, and her concerns regarding class representative substitution, are unfounded. The putative class members were never parties to the pending lawsuit; therefore, the adjudication of Ressler's individual claim has no effect on any of the potential class members' rights to file their own individual or class action lawsuit. The granting of the motion for summary judgment on her individual claim thus rendered moot the class certification issue. *See Cowen*, 70 F.3d at 941. However, it did not foreclose the opportunity for a potential plaintiff to file a similar class action or individual lawsuit in the future.

While Ressler contends that section 213.111.1 requires that an action filed under the MHRA be filed within ninety (90) days of notification of the right to sue by the Missouri Commission on Human Rights ("MCHR"), and this requirement is without exception, this statute of limitations *does not* apply to the putative class members in this case. There is no indication that any of the putative class members, besides Ressler, had filed a similar complaint with MCHR alleging "unlawful discriminatory practice," nor is there any indication that any of the putative class members received right to sue letters indicating a limit on their right to bring a claim under the MHRA. In fact, the opposite is true. The putative class members' potential claims were simply not engaged by the litigation before the court at that point and their due process rights have not been impacted.

There are obvious practical reasons why the rule would have been drafted in such a way as to allow courts, in appropriate cases, to address the merits of an individual claim before addressing the issue of certification. A plaintiff may have a viable case for *class* treatment, but if the plaintiff

does not have a viable substantive claim of her own, she obviously is not well situated to be a class representative. As we see from the federal cases dealing with similar issues, it is preferable to remove the claim of such a plaintiff from the case so that if other claimants wish to bring class claims, they are not encumbered or prejudiced in any way by the prior proceedings.

Because the court did not err in failing to address the issue of class certification prior to granting Clay County's motion for partial summary judgment, Ressler's first three points addressing the putative class members' claims are denied.

## Standard of Review—Individual Claim of Plaintiff

■ We next turn to Ressler's contentions as to her claims as an individual, to determine whether the court erred as to the merits in its grant of summary judgment. The court's review of a grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. The court reviews the record in the light most favorable to the non-moving party and accords her all reasonable inferences that may be drawn from the record. *Id.*

Summary judgment is appropriate only when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Rule 74.04. It has been said that summary judgment should "seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009); *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007). Because discrimination cases often turn on inferences rather than on direct evidence, the court must be particularly deferential to the nonmovant. *See*

*Ruppel v. City of Valley Park*, 318 S.W.3d 179, 185 (Mo.App.2010).

## Analysis

Ressler makes several separate claims of error as to the court's treatment of her individual claim. First, she claims the court erred in granting Clay County's motion for summary judgment and in adopting the County's arguments as the basis for its ruling because the County's arguments amounted to an affirmative defense. She claims that the defense was waived when the County did not comply with Rule 55.08, which requires that each affirmative defense pleaded "shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance."

■ Ressler claims that the County's summary judgment motion rested only on the County's argument that she could not establish that she was treated differently from other similarly situated males because there were no males employed in the Treasurer's office. She states that this was an affirmative defense and that the County did not raise this as an affirmative defense in its answer to Ressler's petition. The County replies that this was not an affirmative defense under Rule 55.08, but was instead an assertion that she could not prove an essential element of her case, *i.e.*, that she was treated differently than similarly situated males.

■ An "affirmative defense" is defined as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's ... claim, even if all the allegations in the complaint are true." BLACK'S LAW DICTIONARY 482 (9th ed.2009). An affirmative defense seeks to defeat or avoid plaintiff's cause of action, and alleges that even if plaintiff's petition is true, plaintiff cannot prevail because there are

additional facts and arguments that permit the defendant to avoid legal responsibility. *See Great Rivers Envtl. Law Ctr. v. City of St. Peters,* 290 S.W.3d 732, 735 (Mo.App. 2009). Here, Count I of Ressler's petition alleged sex discrimination under section 213.055.1(1)(a) of the MHRA. As stated in her brief, "[t]o establish a *prima facie* case of sex discrimination in the workplace, the employee must satisfy four elements: (1) she was a member of a protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) she was treated differently from a similarly situated male." *See Ruppel,* 318 S.W.3d at 185. Therefore, establishing that she was treated differently from one or more similarly situated males is an essential element of her gender discrimination claim, and she is required to prove that element.[7]

 "[A] *prima facie* case for summary judgment can be established by ... showing undisputed facts that negate *any one* of the plaintiff's *required proof elements ....*" *State ex rel. Nixon v. Hughes,* 281 S.W.3d 902, 906–07 (Mo.App.2009) (emphasis added). If the defending party does negate one of the plaintiff's required proof elements, it "establishes a right to judgment as a matter of law" in favor of the defending party. *Id.* Because the County contends that the undisputed facts of the case negate one of the plaintiff's required proof elements on the face of the complaint, the County's assertion is not an affirmative defense. The allegations in the complaint cannot be true if Clay County's contentions are accurate, meaning this cannot be an affirmative defense. Because this is not an affirmative defense to an

otherwise valid claim of sex discrimination, Rule 55.08 was not applicable, and the County did not waive its right to challenge the essential elements of Ressler's claim in its motion for summary judgment.

Next, Ressler contends that the court erred in granting summary judgment because the County failed to comply with Rule 74.04(c)(1), which required the County to include in its summary judgment motion a statement of uncontroverted material facts as to which there was no genuine dispute. Specifically, Ressler contends that the County's reliance on a circuit court opinion in an unrelated case not involving Ressler[8] was in violation of Rule 74.04(c)(1).

Rule 74.04(c)(1) states, in pertinent part:

A motion for summary judgment shall *summarily state the legal basis* for the motion.

A statement of uncontroverted material facts shall be attached to the motion. The statement shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of genuine issue as to such facts.

(Emphasis added.) Here, the County's motion for summary judgment summarily stated its legal argument that Ressler could not establish an essential element of her case because she could not "[show that she was treated differently from similarly situated males], as a matter of law, be-

---

7. Ressler does not pretend to have any direct evidence of discriminatory intent on the part of the county treasurers who established her salary. She sought to establish her MHRA claim based on indirect proof of discrimination. *See Daugherty,* 231 S.W.3d at 819 n. 6.

8. *Boydston v. Shull,* Case No. CV192–1590–CC (Clay County, Mo. Cir. Ct. March 24, 1993).

cause there were no similarly situated males from whom she could have been treated differently." To support this legal assertion, the County listed two material and uncontroverted facts:

1. The relevant time frame, defined by Plaintiff's First Amended Petition, begins in 2003, at which time she alleges Clay County commissioned a job classification study which "concluded that many salaries were out of plan alignment." (First Amended Petition, ¶ 24, attached hereto as **Exhibit A**).

2. From 2003 to the present, there have been no males employed in the Clay County's Treasurer's Department. (Time McMichael Aff. ¶ 3, attached hereto as **Exhibit B**).

It appears that the County has satisfied both requirements of 74.04(c)(1).

 Ressler argues that the County's reliance on a prior circuit court decision in a different case—*Boydston v. Shull*, Case No. CV192–1590–CC (Clay County, Mo. Cir. Ct. March 24, 1993)—for the proposition that "individual elected office holders exercise complete authority over their respective offices, and have sole discretion with respect to hiring and other personnel decisions involving their deputies and assistants, including decisions related to their employees' salaries," should have been set out in the County's statement of uncontroverted material facts. This contention of the County, however, was a contention of law, *not* a contention of material *fact.* Clay County discussed the *Boydston* decision to support its legal argument that individual elected office holders control

employee salaries, not the Clay County Commission, as Ressler contends. We do not find this to be in violation of Rule 74.04(c)(1), as the County was required only to "summarily state the *legal basis*" for its motion and was allowed to "file a separate legal memorandum explaining why summary judgment should be granted," which it did here. Rule 74.04(c)(1).

Ultimately, it appears what Ressler is challenging is the motion court's legal conclusion that the legal principle applied in the *Boydston* decision applied and was dispositive of Ressler's sex discrimination claim. While the trial court's decision in *Boydston* does not bind the trial court in this case or this court, the legal proposition that the County relies on appears to be sound, as we discuss below.

Section 54.230 governs compensation for positions in the Treasurer's office in first class counties such as Clay County that do not have a charter form of government,[9] and states in pertinent part:

> The county treasurer of a county of the first class not having a charter form of government . . . shall be entitled to have and to appoint such a number of deputies and assistants as the county treasurer, with the approval of the county commission, deems necessary for the prompt and proper discharge of his office, and the treasurer's deputies and assistants *shall be paid such salaries as are fixed by the county treasurer* with the approval of the county commission.

(Emphasis added.)

The statute says that the salary of a county's deputy treasurer such as Ressler

---

9. Ressler argues in her reply brief that Clay County has adopted a charter form of government and that therefore section 54.230 is inapplicable. She cites no support for the assertion that Clay County has adopted a charter. Clay County has *not* adopted a charter form of government. For a list of county classifications as of January 2012 in Missouri, see *Missouri Counties by Classification,* Mo. Ass'n of Counties, http://www.mocounties.com/countyinfo/2012classification.pdf (last visited May 1, 2012). Clay County is listed as a county of the first class, *without* a charter form of government. *Id.*

is determined by the elected county treasurer. While county commission approval is obviously required for purposes of the appropriation for the salaries, the treasurer is the initial determinant of the salary of the individual employee and, as we shall see, ultimately the distribution of the appropriated money after the commission has approved the county budget.

The trial court considered and relied on the statutory terms and also two cases that examined the same issue in only slightly different contexts, *State ex rel. Lack v. Melton*, 692 S.W.2d 302 (Mo. banc 1985),[10] and *Kuyper v. Stone County Commission*, 838 S.W.2d 436 (Mo. banc 1992) (both concluding that individual elected officeholders exercise authority over their respective offices, including discretion with respect to their employees' salaries).

In *Melton*, the Court interpreted section 137.715, RSMo Cum.Supp.1984, in addressing a dispute between the Dade County Commission and the county assessor over authority to hire. 692 S.W.2d at 304. The Court held that the budgetary control language in section 137.715 did not "subjugate the autonomy of the assessor's office to the political whims of the county commission via an 'advice and consent' stratagem." *Id.* at 304–05. While the Commission was authorized to approve a total budget for the assessor's office, the final decision regarding who was employed in the office (and at what amount) was the assessor's final decision. *Id.*

In *Kuyper*, which also involved a county assessor, the issue was whether the county could, after the start of the county's fiscal year, alter the salary of a person newly hired by the county assessor after the start of the county's fiscal year. 838 S.W.2d at 437. Pursuant to section 50.010, RSMo 1986, the Commission

adopted a specific budget for the county's fiscal year 1989, which took effect on January 1, 1989. *Id.* at 439. In February, 1989, the assessor hired Kuyper at $825 per month, while the Commission adopted a policy limiting employees to $650 per month. *Id.* The Commission argued that because Kuyper was an employee of Stone County, the Commission controlled her rate of pay per section 50.540.4, RSMo 1986, which provided that "the county commission shall fix all salaries of employees, other than those established by law." *Id.* at 440. The *Kuyper* Court, however, did not find that this "lone sentence" of section 50.540.4 supported the Commission's position when read in the context of the entire statute. *Id.* Instead, the Court found that "[t]he requirements of [s]ection 50.540.4 [were] but one stage in [the lengthy budgetary] process" by which a non-charter county "creates, refines, and reviews the county budget for the *ensuing* fiscal year." *Id.* The Court said that "[a]bsent exigent circumstances, the Commission's power to affect salaries exists only within the framework of the budgetary process." *Id.* Because the salary provided Kuyper did not cause the assessor to expend more funds than were appropriated by the Commission, the Court said the Commission had no authority to lower Kuyper's salary. *Id.* Ressler contends that we are not bound to follow *Kuyper* because it addressed a county of the third class; but section 50.540 applies to all non-charter counties of all classifications and is therefore applicable in this case.

■■■■■■ Ressler, in spite of these pertinent authorities, nevertheless contends that sections 50.540 and 50.610 indicate a clear legislative intent that the county commission maintain a close and direct role in supervising all facets of running the

10. *Melton* was overruled in part on other grounds by *Kuyper v. Stone County Commis-* *sion,* 838 S.W.2d 436, 438–39 (Mo. banc 1992).

county, including setting the compensation for its employees. While it is contemplated in these statutes that the county commission and the elected treasurer must ultimately work together, we cannot agree that the county commission has institutional authority to dictate salaries for the treasurer's office. *See Kuyper*, 838 S.W.2d at 440. Section 54.230 governs the "fixing" of salaries within the treasurer's office. The commission's "approval" of the proposed salary does not mean it is "fixing" the salary of the deputies within the treasurer's office. Section 50.540 "focuses on the process by which the county prepares its annual budget for the *ensuing* year and enters its broad appropriation order." *Id.* Therefore, not only does section 54.230 require the elected treasurer to fix the salaries of employees within his or her office, but sections 50.540 and 50.610 leave the treasurer free to determine how the money is used once it is appropriated. As *Melton* and *Kuyper* demonstrate, individual elected officeholders exercise authority over their respective offices and have discretion with respect to decisions related to their employees' salaries.

▪ Ressler next argues that the Commission enacted ordinances approving and adopting pay plans pertaining to compensation of the County's employees, which are applicable system wide for all employees. She cites Clay County Ordinances sections 35.187 [11] and 35.191 [12] for the proposition that the Commission has full authority to set the compensation rate of its employees and to approve the merit increases. While this may have been the intention of the Commission in adopting these ordinances, the ordinances may not reach so far as to conflict with Missouri State statutes. *See* Clay County Ordinance, Section 30.01—[Commission] Power to Regulate Meetings; Supremacy of State Law ("The commission recognizes the precedence which state law takes over these rules, and *in the event of any conflict between the commission rules and a state statute, the state statute will take precedence.*") (emphasis added); Clay County Ordinance, Section 35.002—Scope [of Chapter 35] ("Policies apply to all positions reporting to elected officials, commissioned officers of the county, appointed staff including department directors and every employee of the county reporting directly or indirectly to *elected officials,* commissioned officers and appointed officials *in accordance with applicable Missouri statutes.*") (emphasis added).

▪ The County has established that Ressler was employed by the elected Treasurer of Clay County and that the elected Treasurer of Clay County had full authority under the law to set the salaries of the employees within that office, subject only to the available funds appropriated to that office by the Commission. Because Ressler admitted that there were no males—that is, zero males—employed by the Treasurer's office during the relevant time period of her gender discrimination claim, and because the Clay County Treasurer determined Ressler's salary, and was in control of the distribution of that salary

---

11. Section 35.187—Authority to Establish Salaries.

The county commission approves minimum and maximum pay ranges for all county positions. The human resources director and county administrator establish pay rates for county positions within the parameters of the county pay plan and in accordance with market value and applicant availability.

12. Section 35.191—Merit Increases.

Merit increases may be approved and paid in accordance with the county pay plan if funds are approved for merit increases through the annual budget process. Employees must receive a performance rating of "meets expectations", at a minimum, to qualify for an increase.

from the money appropriated to the Treasurer's office by the County Commission, Ressler's argument fails as a matter of law. No genuine issue of material fact exists, and the motion court did not err in granting summary judgment as to Count I of Ressler's claims.[13]

### Conclusion

For the foregoing reasons, the judgment of the motion court granting summary judgment in favor of Clay County as to Count I of the petition is affirmed in all respects. The case is remanded to the circuit court for further proceedings. The motion of plaintiffs for attorneys' fees on appeal under section 213.111 is denied.

All concur.

13. In her reply brief for Point V, Ressler contends, *for the first time*, that the affidavit that was included with Clay County's Motion for Summary Judgment cannot be considered as a basis for summary judgment, because it is not in compliance with Rule 74.04(e). We do not consider arguments raised for the first time in a reply brief. *Bruce G. Robert QTIP Marital Trust v. Grasso*, 332 S.W.3d 248, 258 (Mo.App.2010) ("New arguments are not permitted in reply briefs, which 'are solely to be used to reply to arguments made by respondents in their briefs to our court and not to raise new points on appeal.'" (citing *Kramer v. Mason*, 806 S.W.2d 131, 134 (Mo.App. 1991))).