**Jack H. SKAY, Appellant,**

v.

**ST. LOUIS PARKING COMPANY, 4625 Lindell Associates, L.L.C., and Sterling Properties of Missouri II, Inc., Respondents.**

**No. ED 83090.**

Missouri Court of Appeals,
Eastern District,
Division One.

March 16, 2004.

David S. Corwin, Law Office of Gretchen Myers, P.C., St. Louis, MO, for appellant.

Russell F. Waters, T. Michael Ward, Joseph Welsh, Brown & James, P.C., James D. O'Leary, Onder, Shelton, O'Leary & Peterson, LLC, St. Louis, MO, for respondents.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Jack Skay ("Plaintiff"), appeals from the judgments of the Circuit Court of the City of St. Louis in his action for injuries sustained in a fall on a driveway leading to a parking garage on November 22, 2000. Plaintiff brought suit against respondents, St. Louis Parking Company ("St. Louis Parking"), and 4625 Lindell Associates, L.L.C. and Sterling Properties (collectively "Owner"). St. Louis Parking was granted summary judg-

ment by the Honorable Thomas C. Grady prior to trial. Following a four-day trial before the Honorable Evelyn M. Baker, the jury returned a verdict in favor of Owner finding no liability for plaintiff's injuries. We affirm.

Plaintiff claims he was injured when he slipped and fell on a patch of ice while entering the parking garage under the building located at 4625 Lindell Avenue in the City of St. Louis. He alleged that the ice formed after some sprinklers were left on near the driveway to the garage earlier that morning. Plaintiff suffered a fractured right ankle and a sore neck.

Plaintiff lived in a building nearby and paid a monthly fee to park his car in the garage. At the time of the incident, the building, including the parking garage, was owned by 4625 Lindell Associates, L.L.C., and it was managed by their wholly owned management company, Sterling Properties. Owner entered into a contract with St. Louis Parking to provide parking garage management services and to supervise, operate, and manage the garage.

Prior to trial, St. Louis Parking moved for summary judgment, arguing that it had no duty to remove ice from the driveway leading to the parking garage or to warn plaintiff of any hazardous conditions. In support of its motion for summary judgment, St. Louis Parking included, among other documents: 1) an affidavit of its president, Jack Pohrer, which stated that St. Louis Parking had no contractual duty to remove snow or ice from the driveway, that it had no contractual duty to warn of hazardous conditions at the parking garage, and that it did not maintain the sprinkler system at the parking garage; 2) the deposition of Bill Blair, Owner's building engineer, which stated that he was in charge of all maintenance and preventive maintenance of the building, including ice

and snow removal; and 3) the deposition of Latosha Strickland, St. Louis Parking's employee who was on duty at the time of the incident, which stated she had no responsibility for hazards on the premises.

In response to the motion for summary judgment, Plaintiff submitted the contract between St. Louis Parking and Owner, and argued that St. Louis Parking agreed to maintain and operate the parking facility, and therefore summary judgment was inappropriate. Plaintiff further argued that Strickland had witnessed numerous people use the driveway prior to plaintiff's fall, and that she had the ability to advise Owner's employees of the hazardous conditions.

The trial court granted summary judgment, stating "[b]ecause [P]laintiff has failed to adduce any evidence that [St. Louis Parking] had a duty to remove ice and snow at the parking garage or to provide a warning to individuals using the parking garage" summary judgment was appropriate.

The case against Owner proceeded to trial. However, prior to the trial, Owner made a motion *in limine* to prevent Carrie Fly, a witness for Plaintiff, from testifying about statements that a man named Richard Letherberry, an employee of Owner, made to her following Plaintiff's fall. Plaintiff made an offer of proof, at the motion hearing and at the relevant time during the trial, that Fly would have testified that she told Richard about Plaintiff's fall, to which Richard responded that he had forgotten to turn off the sprinklers and that he had made a mistake. The trial court granted Owner's motion, and prevented Fly from testifying about Richard's statements at trial.

The jury returned a general verdict in favor of Owner, and the trial court entered a judgment on this verdict. The trial court denied Plaintiff's motion for judgment notwithstanding the verdict or new trial. This appeal followed.

■ In his first point on appeal, Plaintiff argues that the trial court erred in granting St. Louis Parking summary judgment.

■ The standard of review of a summary judgment is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). We "review the record in the light most favorable to the party against whom judgment was entered[,]" and accord that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* at 376. "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.*

■ A "defending party" may establish a right to summary judgment in any one of three ways: 1) by showing facts that negate any one of the plaintiff's elements facts, 2) by showing that the plaintiff has not, and will not, be able to produce sufficient evidence to show the existence of any one of the plaintiff's elements, or 3) by showing there is no genuine dispute as to the existence of each of the facts necessary to support a properly-pleaded affirmative defense. *Id.* at 381. "Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper." *ITT Commercial*, 854 S.W.2d at 381.

■ Once a defending party establishes a right to judgment as a matter of law, the plaintiff's only recourse is to show that one or more of the material facts shown by the defending party to be above any genuine dispute is, in fact, genuinely disputed. *Id.* The plaintiff may show this by affidavit,

depositions, answers to interrogatories, or admissions on file. *Id.*

In this case, Plaintiff argues that St. Louis Parking either had a duty to keep the garage driveway clear of ice and snow, or had a duty to warn Plaintiff of the dangerous condition that existed because of the presence of the ice. Plaintiff argues that St. Louis Parking breached both of these duties, and therefore, summary judgment was improper.

First, Plaintiff argues that St. Louis Parking had a duty to keep the driveway clear of ice and snow because it was in possession of the garage, and correspondingly owed a duty to Plaintiff, as an invitee on the property. Plaintiff points to language in the contract between St. Louis Parking and Owner, which stated: "[Owner] hereby employs and engages [St. Louis Parking] to supervise the management and operation of said parking facility...." Plaintiff further points out that St. Louis Parking had an employee, Strickland, present at the scene and working in a booth in the garage as evidence of a duty.

However, it is clear that St. Louis Parking did not have a duty to remove ice and snow from the garage driveway. Pohrer stated that his company's responsibilities were limited to taking parking tickets and to performing accounting activities related to the parking fees collected. Pohrer further stated that St. Louis Parking had no contractual duties to perform snow and ice removal, and that in practice, their employees had never removed snow or ice from the parking garage's driveway. Blair stated that Owner had the responsibility for snow and ice removal. Blair further stated that Owner maintained a heater under the concrete pad of the driveway ramp to prevent snow and ice accumula-

tion. The controls to the heater were located in a locked office that only Owner, and not St. Louis Parking, could access. Finally, Strickland testified that her duties were limited to taking tickets and calculating the time customers had been in the parking garage.

■ Plaintiff did not offer any evidence to contradict St. Louis Parking's evidence. We must accept evidence as true when a party fails to produce proof contrary to evidence presented in a motion for summary judgment. *See Martin v. City of Washington,* 848 S.W.2d 487, 492–93 (Mo. banc 1993). Therefore, summary judgment was proper because Plaintiff failed to prove that St. Louis Parking had a duty to remove the snow and ice.

Plaintiff then argues that St. Louis Parking, at a minimum, had a duty to warn him that ice had formed on the driveway. However, for the same reasons as outlined above, we find that St. Louis Parking did not have a duty to warn Plaintiff. Point denied.

■ In his second point on appeal, Plaintiff argues that the trial court erred in refusing to allow Fly to testify that Richard told her that he had forgotten to turn off the sprinklers and that he had made a mistake. We disagree.[1]

The trial court has discretion concerning the admission or exclusion of evidence. *IMR Corp. v. Hemphill,* 926 S.W.2d 542, 546 (Mo.App. E.D.1996). On appeal, we presume that rulings within the discretion of the trial court are correct and the appellant bears the burden of showing that the trial court abused it discretion. *Id.*

---

1. Owner argues that Plaintiff did not make a sufficient offer of proof at trial. However, after a review of the record, we determine that Plaintiff's offer of proof was sufficient and therefore preserved.

Hearsay is when a witness offers an out-of-court statement of another to prove the truth of the matter asserted in that statement. *Bynote v. National Super Markets, Inc.,* 891 S.W.2d 117, 120 (Mo.banc 1995). Hearsay is generally excluded because: 1) the statement is not subject to cross-examination, 2) the statement is not offered under oath, and 3) the statement is not subject to the fact finder's ability to judge demeanor at the time the statement is made. *Id.* However, exceptions to the general rule prohibiting hearsay statements do exist when the circumstances assure the trustworthiness of the declarant's statement. *Id.*

First, Plaintiff relies on *Bynote* and argues that Richard's statement was admissible as an admission of a party opponent. In that case, Bynote was injured when she slipped and fell while shopping at one of National's stores. *Id.* at 119. Bynote testified that while she was still on the floor following her fall, an uniformed grocery bagger, whom she recognized from previous visits to the store, asked her if she was okay. *Id.* at 120. A female checker then approached, and according to Bynote, said to the bagger, "I told you to get that water up." *Id.* The bagger replied, "I did." *Bynote,* 891 S.W.2d at 120.

Neither the bagger nor the checker testified at trial. *Id.* However, the store manager "testified that any employee could direct a bagger to clean up liquid on the floor of the store and that a bagger was required to attend to such spills." *Id.* National attempted to exclude Bynote's testimony as to the statements of the bagger and the checker as hearsay, but the trial court permitted the testimony. *Id.* National appealed. *Id.*

The Supreme Court held that Bynote's testimony about the statements made by the bagger and the checker were admissible as vicarious admissions of National.

*Bynote,* 891 S.W.2d at 124. *Bynote* held that an admission by an employee is admissible against the employer if: 1) the admission is relevant to the issues involved and 2) the employee was acting within the scope of his authority when the admission was made. *Id.*

In this case, because the purported admission is relevant to the issues involved, the only issue we need address is whether Richard made the purported admission while he was acting within the scope of his authority. We find that he was not. Blair provided the only evidence concerning the operation of the sprinklers. He testified that he alone was responsible for operating the sprinkler system, and that he possessed the only key for the system. Blair testified that he turned the sprinkler system off no later than the end of October, or at least three weeks before Plaintiff's fall. We further note that it appears from the evidence that Richard did not even begin working at the property until after Plaintiff's fall.

While in *Bynote* it was within the scope of the checker's duty to tell the bagger to clean up the liquid, and it was the bagger's duty to actually clean up the liquid, it was not Richard's duty to turn off the sprinklers. Therefore the purported admission was not made within the scope of Richard's duties and it was not admissible as an admission of a party opponent.

Second, Plaintiff argues that the statement was admissible to show that Owner had knowledge or notice about the dangerous condition prior to his fall. "Where the statement of which the witness testifies is that of the declarant ... the testimony is admissible only if it meets time and place criteria." *Bynote,* 891 S.W.2d at 121. When a statement is offered to show notice, the statement must be made prior to the slip and fall. *Id.* In this case, Plaintiff alleges that Richard made the statement

after the fall. This fails the time requirement and therefore the purported admission was not admissible to show notice. Point denied.

Based upon the foregoing, we affirm.

ROBERT G. DOWD, JR., J. and MARY R. RUSSELL, J., concur.