

# In the
# Missouri Court of Appeals
# Western District

PAUL L. VARSALONA,

                **Appellant,**

v.

RAFAEL JIMENEZ ORTIZ,

                **Respondent.**

**WD76797**

**OPINION FILED:**

**October 14, 2014**

Appeal from the Circuit Court of Clay County, Missouri
The Honorable Shane Terril Alexander, Judge

Before Division Two: Victor C. Howard, P.J.,
James Edward Welsh, and Anthony Rex Gabbert, JJ.

Paul Varsalona appeals the circuit court's judgment after a jury verdict in favor of Rafael Jimenez Ortiz in his automobile negligence case against Ortiz. Varsalona's claims on appeal are based on his contention that Ortiz was required to plead as an affirmative defense that Varsalona backed into him. We affirm.

## Background

In December 2011, Paul Varsalona filed a lawsuit against Rafael Jimenez Ortiz claiming that Ortiz negligently collided with the back of his vehicle. The case was tried before a Clay County jury over three days in June 2013.

Varsalona testified at trial that on May 13, 2011, he was on his way to the airport when he decided to stop by a friend's house on 48th Terrace in Clay County. He stated that he observed in his rear-view mirror that Ortiz's car had been "tailgating" him for the "last two, three blocks" prior to arrival at his friend's house. Varsalona testified that as he slowed to turn into his friend's driveway, his car was struck from behind by Ortiz's vehicle and was pushed forward about ten feet. Varsalona stated that his vehicle was then struck again by Ortiz's car and that the second collision knocked his vehicle to within a few feet of the driveway. Varsalona asserted that the impacts caused him to "bounce back and forth" and that he sustained a debilitating back injury from the collision.

Ortiz testified that he was heading to his home on 48th Street in Clay County, when he encountered Varsalona's vehicle traveling very slowly on 48th Terrace. Ortiz stated that Varsalona "was traveling really slow" and was "looking to his right and hitting the brake." Ortiz explained that as he approached Varsalona's vehicle, "[w]e were both traveling really slow, and I was about two to three cars' distance behind him." When Varsalona drove slowly up to what apparently was his destination, Ortiz observed that "he passed the driveway a little bit, and he pressed the brakes, and I saw the red lights come on. Then I stopped and I was right on the line of the driveway when I stopped." In other words, Varsalona's vehicle had come to a stop in the street just past the driveway (which by Varsalona's estimation was some thirty to forty feet wide), and Ortiz came to a stop at the beginning of the driveway. Ortiz stated that after both vehicles came to a stop, Varsalona then "very quickly . . . started going in reverse, and I honked my horn, but I didn't have a chance to move back, and he just hit me." Ortiz introduced photographs of both vehicles taken after the accident. He pointed out that the only damage to

2

Varsalona's vehicle consisted of some "little dots" on the bumper from the bolts on Ortiz's license plate holder. Ortiz's vehicle suffered only a small crack in the bumper.

The evidence showed that after the collision, the parties exchanged information, and Varsalona called the police. A police officer came to the scene shortly thereafter, but, after speaking with both drivers, the officer made no report and issued no tickets. On June 21st, thirty-nine days after the accident, Varsalona filed a "walk-in" police report.

Varsalona presented evidence that, despite having back problems for over sixty years, he had been very active, had a high tolerance for pain, and did not need a walker prior to the May 2011 accident. After the accident, however, Varsalona and his witnesses testified that he was in constant pain, consistently needed a walker, wheelchair, or assistance in walking, and needed help from home health workers or family members with his everyday activities. Varsalona asked for an award of damages for the injuries that he sustained in the collision.

Missouri has adopted the doctrine of "comparative fault" in negligence cases. *Lester v. Sayles*, 850 S.W.2d 858, 867 (Mo. banc 1993) (citing *Gustafson v. Benda*, 661 S.W.2d 11, 15 (Mo. banc 1983)).[1] During the instruction conference in this case, the circuit court ruled that because Ortiz did not properly plead comparative fault, the court would not submit his comparative fault instruction. The circuit court also rejected Varsalona's request to submit the

---

[1] The doctrine applies the general principle "that a plaintiff's contributory fault does not bar his recovery but instead apportions damages according to the proportionate fault of the parties." *Gustafson*, 661 S.W.2d at 19, app. A (quoting Uniform Comparative Fault Act, § 1, Commissioners' Comment). "The key to [the doctrine] is that a jury decides the issues of relative fault and assesses appropriate percentages." *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 107 (Mo. banc 1996).

case to the jury pursuant to the rear-end doctrine using MAI 17.16.[2]  Instead, the court submitted a negligence instruction using MAI 17.02.[3]

The jury ultimately returned a verdict in favor of Ortiz.  Varsalona appeals.

**Discussion**

In Point I, Varsalona argues that the circuit court erred in admitting Ortiz's testimony, over objection,[4] that Varsalona had backed into Ortiz's car.  This claim is premised on Varsalona's contention that Ortiz was required to plead his claim that Varsalona backed into his vehicle as an affirmative defense and that, because he failed to do so, this evidence was outside the scope of the pleadings and, thus, inadmissible.

We give substantial deference to a trial court's decision to admit evidence and will not disturb that decision absent an abuse of discretion.  *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991).  "On appeal, we presume that rulings within the discretion of the trial court are correct and the appellant bears the burden of showing that the trial court abused its discretion."

---

[2]The rear-end collision doctrine is limited in scope, and a trial court may instruct a jury under the theory only when the case falls squarely within the doctrine's factual prerequisites.  *Clark v. Belfonte Dist., Inc*., 163 S.W.3d 581, 586 (Mo. App. 2005).  The doctrine is inapplicable in a case such as this where the evidence does not justify an inference of negligence on the part of the defendant without proof of a specific act of negligence. *See, e.g., Feick v. Fenlon*, 939 S.W.2d 537, 538 (Mo. App. 1997).

[3]Instruction No. 8 stated:

Your verdict must be for plaintiff if you believe:

First, either:
    defendant failed to keep a careful lookout, or
    defendant drove at an excessive speed, and

Second, defendant, in any one or more of the respects submitted in First, was thereby negligent, and

Third, as a direct and proximate result of such negligence, plaintiff sustained damage.

[4]The parties disagree as to whether Varsalona's objections properly preserved this claim for appeal.  Our resolution of this claim renders that issue irrelevant.

4

*Skay v. St. Louis Parking Co*., 130 S.W.3d 22, 26 (Mo. App. 2004). Here, Varsalona claims that the decision to admit this evidence was *not* within the trial court's discretion because a trial court has no discretion to admit "objected-to evidence [that] is outside the scope of the pleadings." *See Int'l Div., Inc. v. DeWitt and Assoc., Inc*., 425 S.W.3d 225, 228 (Mo. App. 2014).

Varsalona contends that the circuit court committed "reversible error . . . when it permitted [Ortiz] to offer a defense that was not included in his pleadings." He relies in part on Rule 55.08, which requires a party, "[i]n pleading to a preceding pleading, [to] set forth all applicable affirmative defenses and avoidances."[5] Varsalona complains that even after the trial court rejected Ortiz's comparative fault instruction, Ortiz "did not move to amend his pleadings in order to raise any affirmative defense, and certainly did not amend to allege facts supporting his assertion that Varsalona caused the collision by backing up." According to Varsalona, the admission of this evidence allowed Ortiz "to present his unpled affirmative defense."

We disagree. An "affirmative defense" is defined as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, ***even if all the allegations in the complaint are true***." *Ressler v. Clay County*, 375 S.W.3d 132, 140 (Mo. App. 2012) (quoting BLACK'S LAW DICTIONARY 482 (9th ed. 2009)) (emphasis added). "Under Missouri's pleading rules, an affirmative defense is a matter that is asserted to avoid liability, even if the facts pleaded in the petition are proved." *Boone Nat'l Savings & Loan Ass'n, F.A. v. Crouch*, 47 S.W.3d 371, 375, (Mo. banc 2001). "An affirmative defense . . . alleges that even if plaintiff's

---

[5]Rule 55.08 includes the following in its non-exclusive list of affirmative defenses and avoidances:

[A]ccord and satisfaction, arbitration and award, assumption of risk, contributory negligence, comparative fault, state of the art as provided by statute, seller in the stream of commerce as provided by statute, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, truth in defamation, waiver[.]

petition is true, plaintiff cannot prevail because there are additional facts and arguments that permit the defendant to avoid legal responsibility." *Ressler* 375 S.W.3d at 140-41.

Here, Varsalona's Petition alleged the following acts of negligence:

4. That . . . Defendant Rafael Jimenez Ortiz was following Plaintiff in a motor vehicle, aggressively following at a distance that was too close for him to safely respond to the actions of the traffic in front of his motor vehicle.

. . . .

6. As Plaintiff's vehicle was entering into a turning movement, Defendant struck the rear of Plaintiff's vehicle with such force that it knocked the Plaintiff's car nearly ten feet forward from the position of the initial turn.

. . . .

8. That as a direct and proximate result of the negligent and careless acts of the Defendant Rafael Jimenez Ortiz, Plaintiff suffered serious and permanent injuries as hereinafter more fully pleaded.

9. That Defendant Rafael Jimenez Ortiz failed to exercise the highest degree of care in the operation of his motor vehicle in the following respects:

> (a) He operated the vehicle at an excessive speed;
>
> (b) He was following Plaintiff's vehicle too closely;
>
> (c) He failed to keep a careful lookout;
>
> (d) He failed to yield the right-of-way;
>
> (e) He collided with the rear of the nearly stopped vehicle in which Plaintiff was the driver;
>
> (f) He knew or should have known that there was a reasonable likelihood of collision in time thereafter to have stopped, swerved, slackened his speed and sounded a warning, or swerved and sounded a warning, but failed to do so.

Ortiz did not at any point, either in his Answer or at trial, concede that any, let alone all, of the allegations of negligence in Varsalona's petition were true. In Ortiz's Answer, he entered a

6

denial as to each of the above allegations. In his "Additional Responses," he alleged, *inter alia*, that

> [i]f Plaintiff sustained any injury or damage, which is specifically denied, Plaintiff's negligence caused or contributed to cause the same and bars or diminishes any recovery to which Plaintiff would otherwise be entitled.

At trial, Ortiz testified that he had come to a complete stop two to three car lengths behind Varsalona and never moved his vehicle thereafter. Ortiz further stated that after both vehicles had come to a stop, Varsalona "very quickly . . . started going in reverse." He stated that he honked his horn but "didn't have a chance to move back" before Varsalona collided with his vehicle. His evidence showed that the only damage to Varsalona's vehicle consisted of some "little dots" on the bumper from the bolts on Ortiz's license plate holder and that his vehicle suffered only a small crack in the bumper.

Contrary to Varsalona's claims, "a matter that merely negates an element of the plaintiff's prima facie case is not an affirmative defense" that must be pleaded in the defendant's answer. *See* 61A AM.JUR.2D, *Pleading*, § 300. As explained in *Smith v. Kansas City Public Service Co.*, 43 S.W.2d 548, 555 (Mo. banc 1931):

> The plea in the amended answer that plaintiff's "injuries, if any, were caused solely and exclusively by his own negligence," was not a plea of contributory negligence or any other sort of affirmative defense. It was merely a denial of plaintiff's cause of action. . . . . "Any fact, the effect of which is to show that an essential statement in the plaintiff's cause of action is untrue, may be proven under the general denial, and therefore should not be specially pleaded, and, if so pleaded, should be stricken out as redundant."

In *Oldaker v. Peters*, 817 S.W.2d 245, 251 (Mo. banc 1991), the Court held that the defendant's evidence introduced to show that she was not negligent in an automobile accident because her vehicle had mechanical defects was simply a denial of plaintiff's cause of action which may be offered under a general denial. The Court stated that such claims "are not matters

7

constituting avoidance, and hence are not required to be affirmatively pleaded." *Id*. The Court

pointed out that the issue being argued was not apportionment of fault but, as in this case, was

the lack of negligence or fault of the defendant. *Id*. at 252. As such, the "defendant may

introduce any evidence that tends to establish that she is not guilty of the negligence charged,"

even evidence that someone else is the sole cause of the accident.[6] *Id*. at 252-53. *See also*

*McVey v. St. Louis Pub. Serv. Co.* 336 S.W.2d 524, 528 (Mo. 1960) (where defendant offered

evidence of brake failure to show that he was not negligent, held that the claim was "similar to

the sole cause situation which has always been held not to be an affirmative defense").

Here, as noted, the circuit court ruled that because Ortiz did not properly plead

comparative fault, the court would not submit his comparative fault instruction. But, as the

foregoing authorities show, Ortiz was *not* required to plead any "affirmative defense" to support

his claim that he was not negligent. Ortiz's Answer expressly denied Varsalona's allegation that

Ortiz had struck the rear of Varsalona's vehicle, and Ortiz testified unequivocally at trial that he

had brought his vehicle to a complete stop, never moved his vehicle after that, and Varsalona

backed into his vehicle. Ortiz was entitled to present a defense to Varsalona's claim that he rear-

ended Varsalona's vehicle, and the evidence that Ortiz presented established that Varsalona's

vehicle was not rear-ended by Ortiz moving his vehicle into it.

Because Ortiz was not required to plead his version of the events surrounding the

collision as an affirmative defense, the circuit court did not err in admitting that evidence. Point

I is denied.

---

[6]The Court explained that, while MAI 1.03 does not permit a "sole cause" instruction to be given, it "does not prevent a defendant from introducing evidence and arguing that the acts of one other than the defendant were the sole cause of the accident." *Oldaker*, 817 S.W.2d at 253.

In Point II, Varsalona argues that the circuit court erred in submitting Instruction No. 8 because any evidence of cause other than that Ortiz's automobile collided with the rear of Varsalona's automobile (in particular, Ortiz's testimony that Varsalona backed into Ortiz) was outside the scope of the pleadings, in that Varsalona failed to include this as an affirmative defense. Having concluded in Point I that Varsalona was not required to plead any such affirmative defense, this point need not and will not be discussed. Point II is denied.

Based on the foregoing, we affirm the circuit court's judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

9