

# Missouri Court of Appeals
## Southern District
### In Division

JANE DOE, a minor by next friend, T.N., )
)
          Appellant, )
) No. SD38331
    vs. )
) FILED: September 3, 2024
FIRST BAPTIST CHURCH OF )
PIERCE CITY, MISSOURI, )
)
          Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable David Allen Cole, Judge

### TRANSFERRED TO SUPREME COURT PURSUANT TO RULE 83.02

Jane Doe ("Plaintiff"), by next friend, T.N., appeals from the circuit court's grant of summary judgment in favor of First Baptist Church of Pierce City ("FBC") on her negligence claim relating to sexual assaults she suffered while in the care and custody of FBC. We would affirm the summary judgment of the circuit court on the basis of ***Gibson v. Brewer***, 952 S.W.2d 239 (Mo. banc 1997), but due to the general interest and importance of the issues on appeal, we transfer the case to the Supreme Court of Missouri pursuant to Rule 83.02.[1]

### Factual and Procedural Background

The uncontroverted material facts establish that FBC is a Southern Baptist church and

---

[1] All rule references are to Missouri Court Rules (2023).

that Plaintiff participated in FBC's youth ministries program.  A youth pastor led FBC's youth ministries program and transported participants, including Plaintiff and others, to and from said program in a church van.  On two occasions in March of 2022, another participant in FBC's youth ministries program inappropriately touched Plaintiff in the church van during its operation by the youth pastor.  Plaintiff, thereafter, filed a negligence claim against FBC, premising her claim on the failure by FBC to prevent the incidents by following standards for the prevention of child sexual abuse.

FBC denied liability and moved for summary judgment.  In its motion, FBC cited **Gibson** for the proposition that "the First Amendment bars a negligence claim against a church if the negligence claim would require the court to decide how a reasonably prudent church should have acted."  FBC argued that Plaintiff's negligence claim "would require [the circuit court] to decide how [FBC], as an institution, and through its Youth Pastor, should have conducted its student ministries."  FBC further argued that "[g]iven these facts, Plaintiff cannot prove, without [the circuit court] violating the First Amendment, the element of breach as that would require [the circuit court] to find how [FBC] should have conducted its youth ministries."

The circuit court agreed with FBC and granted summary judgment in its favor.  In pertinent part, the circuit court, relying on **Gibson**, stated, "[w]hether negligence exists in a particular situation depends on whether or not a reasonably prudent person would have anticipated danger and provided against it."  The circuit court further stated, "[i]n order to determine how a 'reasonably prudent Diocese'[2] would act, a court would have to excessively

---

[2] In **Gibson**, which is the controlling case, the religious entity defendant was the Catholic Diocese of Kansas City-St. Joseph.  952 S.W.2d at 243.  As such, the **Gibson** opinion heavily relies on various denomination-specific titles appropriately applied to that entity, leadership, and members, including "Diocese," "clergy," and "parishioners." Although we quote **Gibson** and utilize the aforementioned terminology extensively throughout our discussion, we recognize that such terminology is not necessarily appropriate to describe the various religious roles involved in the instant case.

entangle itself in religious doctrine policy and administration." Plaintiff timely appeals this judgment.

## Standard of Review

"Summary judgment is designed to permit the trial court to enter judgment, without delay, where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When the party moving for summary judgment is a defending party, as is the case here, the movant's right to summary judgment can be established by showing one of the following:

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381.

## Discussion

Plaintiff raises five points on appeal challenging the circuit court's grant of summary judgment. In her first point, Plaintiff contends that FBC failed to plead specific facts in its answer so as to properly plead the First Amendment as an affirmative defense. In her second and third points, Plaintiff respectively contends that either FBC failed to assert any material facts that the transportation of children involves religious practice or doctrine or, if FBC produced such facts, there remains genuine issues of material fact regarding the issue. In her fourth point, Plaintiff contends that, as a matter of law, the First Amendment does not prohibit her negligence claim because her abuser was not a member of FBC's leadership. Because we find that *Gibson* is controlling as to all of Plaintiff's points, we discuss those points together. Candidly, Plaintiff

3

acknowledges that only the Supreme Court of Missouri may be able to grant the relief she seeks and, therefore, with her fifth point, she contends that *Gibson* was wrongly decided in order to preserve that contention for transfer.

We begin our discussion with the controlling case. In *Gibson*, a boy and his parents accused a member of a diocese's clergy of sexual abuse and sued the diocese for, *inter alia*, negligent hiring/ordination/retention, negligent failure to supervise, negligent infliction of emotional distress, and independent negligence of the diocese. 952 S.W.2d at 243-44. The circuit court dismissed these negligence claims on the basis that they failed to state claims upon which relief could be granted, and the Supreme Court of Missouri affirmed holding that the First Amendment of the United States Constitution, specifically the Free Exercise and Establishment Clauses,[3] prohibit courts from entertaining certain negligence claims against religious organizations where the analysis of the issues would require a determination on ecclesiastical matters. *Id.* at 244, 246-50.[4]

At this stage of our discussion, *Gibson* demonstrates why Plaintiff's first point—contending FBC failed to adequately plead the First Amendment as an affirmative defense—fails. "An affirmative defense is defined as a defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's claim, even if all the allegations in the complaint are true."

---

[3] The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S CONST. amend. I.

[4] Our high court observed that "[i]f neutral principles of law can be applied without determining questions of religious doctrine, polity, and practice, then a court may impose liability" and provided examples of two such situations arising in negligence. *Gibson*, 952 S.W.2d at 246. In the first example, "a church can be vicariously liable for the negligent operation of a vehicle by a pastor in the scope of employment." *Id.* (citing *Garber v. Scott*, 525 S.W.2d 114, 119-20 (Mo.App. 1975)). In the second example, "[our high court]—when abolishing the doctrine of charitable immunity in Missouri—authorized a person who slipped and fell on church premises to sue for negligence." *Id.* (citing *Garnier v. St. Andrew Presbyterian Church of St. Louis*, 446 S.W.2d 607, 608 (Mo. banc 1969)). "The result is that the church, as the owner and occupier of the premises in question, is subject to all the duties and liabilities which are incident to the ownership and possession of real estate." *Id.* (internal quotation marks omitted). Our high court additionally observed that recognizing *intentional* tort claims, such as the intentional failure to supervise clergy, "does not offend the First Amendment." *Id.* at 248.

***Ressler v. Clay County***, 375 S.W.3d 132, 140 (Mo.App. 2012) (internal quotation marks omitted). We note that FBC asserts in its answer "that as a religious institution, Plaintiff's Second Amended Petition violates the Establishment and Free Exercise Clauses as found in the First Amendment of the United States Constitution[.]" Plaintiff argues that this pleading fails to comply with Rule 55.08, requiring affirmative defenses to be pleaded with "a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance." Rule 55.08.

The flaw in Plaintiff's argument is that FBC's motion for summary judgment appears *not* to have been premised upon an affirmative defense. Rather, as it stated in its motion, FBC moved for summary judgment on the basis that "*Plaintiff cannot prove*, without [the circuit court] violating the First Amendment, *the element of breach* as that would require [the circuit court] to find how [FBC] should have conducted its youth ministries." (Emphasis added.) "[A] matter that merely negates an element of the plaintiff's prima facie case is not an affirmative defense that must be pleaded in the defendant's answer." ***Varsalona v. Ortiz***, 445 S.W.3d 137, 141 (Mo.App. 2014) (internal quotation marks omitted).

In ***Gibson***, our high court held that there was no error in dismissing similar negligence counts against a religious organization for failing to state a claim upon which relief could be granted. 952 S.W.2d at 246-50. "[D]ismissal for failure to state a claim is proper where *facts essential to recovery* are not pled." ***Stein v. Novus Equities Co.***, 284 S.W.3d 597, 602 (Mo.App. 2009) (emphasis added). In a similar fashion, "[a] *prima facie* case for summary judgment can be established by showing undisputed facts that negate *any one* of the plaintiff's *required proof elements*." ***Ressler***, 375 S.W.3d at 141 (internal quotation marks omitted). In either approach, the defect lies with the plaintiff's cause of action, not the failure of an affirmative defense. Rule

55.08 simply had no application here that would have prevented the circuit court's summary judgment. Accordingly, we would deny point 1.

Returning to the negligence claims at issue in *Gibson*, we must first address the negligent hiring/ordination/retention and negligent failure to supervise claims. Our high court observed that "[q]uestions of hiring, ordaining, and retaining clergy . . . necessarily involve interpretation of religious doctrine, policy, and administration." 952 S.W.2d at 246-47. "Such excessive entanglement between church and state has the effect of inhibiting religion, in violation of the First Amendment" and "would result in an endorsement of religion, by approving one model for church hiring, ordination, and retention of clergy." *Id.* at 247. Similarly, the negligent supervision claim "implicates the duty of a master to control conduct of a servant[.]" *Id.* And "[a]djudicating the reasonableness of a church's supervision of a cleric—what the church 'should know'—requires inquiry into religious doctrine" and, as with the negligent hiring/ordination/retention claim, "would create an excessive entanglement, inhibit religion, and result in the endorsement of one model of supervision." *Id.*

Plaintiff contends in its second and third points that FBC failed to demonstrate, for the purpose of summary judgment, that the transportation of children involves religious doctrine or policy. Plaintiff goes a step further in her fourth point, contending that the First Amendment has absolutely no applicability to the undisputed material facts of this case because all of the First Amendment principles set out by *Gibson* apply only in the situation described above—inquiry into the relationship between a church and its clergy. As Plaintiff observes, the instant case involves no such allegation against a cleric or any other religious official. Plaintiff suggests that "[t]he central finding of each decision [including and since *Gibson*], despite what expansive dicta may have been included, is that it is the purported interference with the relationship, or

6

governance, between the religious institution and its leadership that resulted in the immunity[.]" Here, according to Plaintiff, the circuit court "relied on expansive out of context and unfounded dicta to focus the analysis solely on whether the negligence claim would involve determining how a 'reasonably prudent Diocese' would act."

The flaw in this argument is that it ignores that negligent hiring, ordination, retention, and supervision of religious officials are not the only negligence-based claims that our high court determined are foreclosed by the First Amendment. Our high court also determined that there was no error in the dismissal of the negligent infliction of emotional distress claim against the diocese. *Gibson*, 952 S.W.2d at 248-49. The specific allegations were that "the Diocese negligently inflicted emotional distress on them by: failing to investigate, covering up the incident, and making the statements 'this happens to young men all the time,' this was 'an innocent pat on the butt' and they should 'forgive and forget' and get on with their lives." *Id.* at 248. Our high court observed that this claim "is related not to the relationship between the Diocese and its clergy, *but rather to the relationship between the Diocese and its parishioners*." *Id.* at 249 (emphasis added). And yet the claim was foreclosed because "[t]o determine whether the Diocese's responses to its members' claims were 'reasonable,' a court would inevitably judge the reasonableness of religious beliefs, discipline, and government." *Id.* Our high court held that "[a]pplying a negligence standard to the actions of the Diocese in dealing with its parishioners offends the First Amendment." *Id.*

It was in a similar vein that our high court also determined that there was no error in dismissing the claim for independent negligence of the diocese. *Gibson*, 952 S.W.2d at 249-50. The alleged acts of negligence comprising this claim were:

> (1) failing to have a policy to prevent sexual abuse of minors, (2) concealing unlawful sexual acts and abuse by failing to educate and accurately inform the

7

public, (3) ignoring and failing to investigate complaints, (4) trying to silence claims and prevent members and the public from discovering priests accused of sexual misconduct, and (5) failing to evaluate the propensity of priests to engage in improper sexual conduct.

*Id.* at 249. Our high court noted that the elements the plaintiffs had to show in order to establish a claim for negligence were: "(1) defendant had a *duty to the plaintiff*; (2) defendant failed to perform that duty; and (3) defendant's breach was the proximate cause of the plaintiff's injury." *Id.* (emphasis added). However, "[w]hether negligence exists in a particular situation depends on whether or not a reasonably prudent person would have anticipated danger and provided against it." *Id.* In affirming the dismissal of this claim, our high court observed that "[i]n order to determine how a '*reasonably prudent Diocese*' would act, a court would have to excessively entangle itself in religious doctrine, policy, and administration." *Id.* at 249-50 (emphasis added). Our high court explained:

> The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it.

*Id.* at 250 (quoting ***Serbian E. Orthodox Diocese v. Milivojevich***, 426 U.S. 696, 711 (1976)). Our high court further explained that "[c]hurch members give their implied consent to be subject only to such appeals as the organism itself provides for." *Id.* (internal quotation marks omitted).

Thus, it is not accurate to say that "[t]he central finding" of ***Gibson*** was "that it is the purported interference with the relationship, or governance, between the religious institution and its leadership that resulted in the immunity[.]" Plaintiff's attempt to provide support for this argument relies heavily on ***Doe v. Roman Catholic Archdiocese of St. Louis***, 347 S.W.3d 588 (Mo.App. 2011). In ***Doe***, the eastern district of this Court distinguished ***Smith, By and Through Smith v. Archbishop of St. Louis on behalf of Archdiocese of St. Louis***, 632 S.W.2d 516

(Mo.App. 1982), a case predating *Gibson*, by stating, "[w]hile that case involved negligent supervision, it did not involve negligent supervision of a member of the clergy, and thus, it did not involve any First Amendment entanglement." 347 S.W.3d at 595 n.4. Plaintiff utilizes this excerpt from *Doe* to suggest that a negligence claim, so long as it does not involve the relationship between a religious institution and its leadership, avoids any and all First Amendment entanglement concerns. But as discussed *supra*, *Gibson* does not state or stand for this proposition. *Gibson*, rather, is clear that negligence claims involving *either* the relationship between a religious institution and its leadership *or* the relationship between that institution and its members offends the First Amendment. And it is that latter relationship—manifested here by the relationship between FBC and Plaintiff—that is of concern in the instant case.[5]

Furthermore, the circuit court's determination in the instant summary judgment that "[i]n order to determine how a 'reasonably prudent Diocese' would act, a court would have to excessively entangle itself in religious doctrine policy and administration" was *not* "unfounded dicta" as Plaintiff argues. Rather, this was part and parcel of our high court's holding in *Gibson* that the dismissal of the aforementioned claim for independent negligence was not erroneous. *See* 952 S.W.2d at 249-50. Here, the undisputed material facts of Plaintiff's claim are similar to that independent negligence claim from *Gibson*. Plaintiff asserts that FBC, a Southern Baptist religious institution, had a duty to supervise the youth ministries program members, including *herself*, while they were transported on a church van as part of that program, that FBC breached this duty by failing to either have or follow a policy to protect minors from sexual abuse, and that

---

[5] In her brief, Plaintiff observes that neither she, nor her abuser, were members of FBC's congregation. According to the summary judgment materials, to be a member of FBC's congregation, individuals have to be eighteen-years-old, which Plaintiff was not. It is undisputed, however, that Plaintiff was a member of FBC's student youth ministries and was assaulted by another such member in the context of her attendance therewith. Plaintiff fails to draw any material distinction between being a member of FBC's congregation and being a member of FBC's student youth ministries, let alone develop such a distinction into a cogent legal argument against the circuit court's summary judgment.

9

Plaintiff was injured as a result by the actions of a fellow youth ministries program member. Under *Gibson*, "[i]n order to determine how a 'reasonably prudent [Southern Baptist student ministries program]' would act, a court would have to excessively entangle itself in religious doctrine, policy, and administration." *Id.* Accordingly, we would deny points 2, 3, and 4.

The *Gibson* decision "is binding on this [C]ourt," *D.T. v. Catholic Diocese of Kansas City-St. Joseph*, 419 S.W.3d 143, 149 (Mo.App. 2013), and Plaintiff cites to no authority suggesting otherwise. As such, we would deny Plaintiff's fifth and final point, in which she contends that *Gibson* was wrongly decided. We agree, however, that this case may present issues of general interest and importance that our high court may want to address. We acknowledge that FBC is correct that our high court recently reconsidered and declined an invitation to overrule *Gibson* in *Doe 122 v. Marianist Province of the United States*, 620 S.W.3d 73, 76-81 (Mo. banc 2021). Yet, the only tort claims and holdings from *Gibson* that were germane to the discussion in *Doe 122* were those relating to the relationship between the diocese and its clergy, i.e., negligent hiring or retention, negligent failure to supervise, and intentional failure to supervise clergy. *Id.* at 75-77. *Doe 122*, therefore, did not reconsider the holdings from *Gibson* that are germane to the instant case—those addressing the negligence tort claims that related to the relationship between the diocese, not with its clergy, but with its parishioners. *See Gibson*, 952 S.W.2d at 248-50. Our research has revealed no case since *Gibson* discussing these holdings in detail or applying them as we have done here in the manner in which *Gibson*, per our reading of that opinion, compels us.

## Decision

We would affirm the summary judgment of the circuit court, but due to the general

interest and importance of the issues on appeal, we transfer the case to the Supreme Court of Missouri pursuant to Rule 83.02.

BECKY J.W. BORTHWICK, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCURS

MATTHEW P. HAMNER, J. – CONCURS